UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES ex. rel. | ) | |
| LEALTON CHEARS, | ) | |
| | ) | |
| Petitioner, | ) | No. 06 C 2118 |
| | ) | |
| v. | ) | Judge Ruben Castillo |
| | ) | |
| GERARDO ACEVEDO, Warden, | ) | |
| Hill Correctional Center, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM OPINION AND ORDER

Illinois prisoner Lealton Chears ("Chears") is serving a thirty-year extended-term

sentence for second-degree murder. (R. 29, State Ct. R., Ex. I at 39.) Presently before the Court

is Chears' amended petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Section

2254"), which challenges the sentence imposed by a state court. (R. 16, Am. Pet.) For the

reasons stated below, Chears' amended petition for writ of habeas corpus is denied.[1]

### BACKGROUND[2]

Early on the night of June 7, 1997, Chears and Edmond Chambers ("Chambers") got into

_____

[1] Chears identified Roy Bradford as the respondent in his original petition. (R. 1, Pet.)
In his amended petition, he has named the current warden of Hill Correctional Center, Gerardo
Acevedo, as the respondent. (R. 16, Am. Pet.)

[2] In reviewing a petition for habeas corpus relief pursuant to Section 2254, a court must
presume that state court factual determinations are correct. 28 U.S.C. § 2254(e)(1). This
presumption can be overcome where the petitioner rebuts those facts by clear and convincing
evidence. _Id._ The following summary of relevant facts is therefore properly derived from the
state court opinions issued by Illinois courts and is supplemented where appropriate by the
appellate record submitted to the Court pursuant to Rule 5 of the Rules Governing Section 2254
Cases in the United States District Courts. _See Todd v. Schomig_, 283 F.3d 842, 846 (7th Cir.
2002); _accord Rever v. Acevedo_, 590 F.3d 533, 537 (7th Cir. 2010).

a verbal altercation. (R. 29, State Ct. R., Ex. B at 3.) Their argument took an tragic turn when Chambers threw an empty liquor bottle at Chears. (*Id.*) After tossing the bottle at Chears, Chambers ran away. (*Id.*) Chears then pulled out a gun, chased Chambers, and shot him four times; two of the bullets hit Chambers in the lower back, while the remaining two entered his head and right buttock. (*Id.* at 3-4; Ex. A at 28.) As a result of the injuries he sustained, Chambers died later that night. (*Id.*, Ex. F at G13.) Chears turned himself in the following day. (*See id.* at G66-67.)

Chears' jury trial began on December 9, 1997. (*See id.*, Ex. D.) At trial, witness testimony varied as to whether all the shots Chears fired at Chambers were in rapid succession or whether there was a final shot after Chambers fell to the ground. (R. 29, State Ct. R., Ex. B at 3.) Two of the state's witnesses, Darryl Ferguson ("Ferguson") and Edward Riggs ("Riggs"), testified that after Chambers fell to the ground, Chears shot him again. (*Id.* at 4.) Riggs testified that Chears ran past Chambers as he fired the fourth and final shot. (*Id.*) Ferguson, on the other hand, stated that Chears stood over Chambers' wounded body and shot him a fourth time. (*Id.*) In apparent contrast to the testimony of Ferguson and Riggs, the state's other witnesses, Lilly Jones, Michael Jones, and Keith Thomas ("Thomas"), along with defense witnesses Edward Clark ("Clark") and Robert Murphy ("Murphy"), all testified that the shots they heard were fired in rapid succession. (*Id.*)

Dr. Thamrong Chira ("Dr. Chira"), a medical examiner, testified that Chambers' head wound was "consistent" with being on the ground at the time he was shot; he did, however, note that the wound could have an alternative explanation. (*Id.*) Specifically, Dr. Chira testified that the head shot could have resulted from a person measuring 6'1" or 6'2" shooting a person 5'7"

2

from behind if the victim had a hyperextension of his head or face.[3] (*Id.*) Three witnesses testified that Chears' is 6'1"; Murphy stated that Chambers was 5'6". (*Id.*) Adding to this alternative explanation, Dr. Chira also testified that it is not uncommon for an individual to throw his head back while running. (*Id.*)

At the conclusion of his trial, Chears was found guilty of second-degree murder.[4] (*Id.*) The trial court subsequently sentenced Chears to an extended-term sentence of thirty years.[5] (*Id.*) In doing so, it found that certain aggravating factors supported an extended-term sentence. Specifically, the trial court concluded that "the conduct under the circumstances of this case for shooting an unarmed, fleeing individual in my opinion is particularly brutal or heinous, indicative

---

[3] The degree of hyperextension can be clarified by the following exchange at trial:
Prosecutor: Dr. Chira, with regard to the first gunshot wound, the gunshot wound to the head, for a person to receive one like that in a standing position how far up would their head have to be hyperextended?
Dr. Chira: It would have to be real hyperextended.
Prosecutor: Almost looking straight up to the sky; is that correct?
Dr. Chira: Yes. [remainder of response omitted]
(R. 29, State Ct. R., Ex. F at G47.)

[4] Under Illinois law, a "person commits the offense of second degree murder when he or she commits the offense of first degree murder . . . and either of the following mitigating factors are present: (1) at the time of the killing he or she is acting under a sudden and intense passion resulting from serious provocation by the individual killed or another whom the offender endeavors to kill, but he or she negligently or accidentally causes the death of the individual killed; or (2) at the time of the killing he or she believes the circumstances to be such that, if they existed, would justify or exonerate the killing . . . but his or her belief is unreasonable." 720 Ill. Comp. Stat. 5/9-2(a).

[5] An extended-term sentence is a sentence for a term of imprisonment in excess of the maximum sentence authorized for an offense. *See* 730 Ill. Comp. Stat. 5/5-8-2. Such a sentence can be imposed if certain aggravating factors are present. *Id.* For example, an extended-term sentence may be imposed when a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. 730 Ill. Comp. Stat. 5/5-5-3.2(b)(2).

of wanton cruelty and falls within that statute authorizing an extended term sentence." (*Id.*, Ex. G at I26.) On February 9, 1998, Chears' trial counsel filed a notice of appeal, but failed to prosecute the appeal. (*Id.*) As a result, the appeal was dismissed. (*Id.*)

On July 9, 2001, Chears filed a *pro se* postconviction petition alleging, *inter alia,* ineffective assistance of counsel based on his trial counsel's failure to pursue the direct appeal. (*Id.*, Ex. I at C32-38.) On March 14, 2002, the trial court granted Chears relief in the form of allowing him to file a late notice of appeal. (*Id.*, Ex. I at C60.)

Chears presented three arguments in challenging his sentence on direct appeal. First, he contended that his thirty-year extended-term sentence violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000). (*Id.*, Ex. N at 21-26.) Second, Chears argued that the trial court's imposition of an extended-term sentence was improper because it "effectively rejected the mitigating evidence that the jury accepted in finding [Chears] guilty of second degree murder rather than first degree murder." (*Id.* at 27-38.) Finally, he asserted that the trial court's findings of aggravating factors were not supported by the record. (*Id.* at 39-47.)

On June 1, 2004, the Illinois Appellate Court, First Judicial District ("state appellate court"), affirmed Chears' conviction and sentence. (*Id.*, Ex. A at 1-31.) In its decision, it rejected all three of Chears' arguments. With respect to Chears' first argument, the state appellate court found that while the trial court clearly violated *Apprendi* by sentencing Chears to an extended-term sentence based on a judicially-determined finding, it concluded that this mistake was not plain error because Chears was not prejudiced by the absence of a jury's finding

of exceptionally brutal and heinous conduct.[6] (*Id.* at 18-24.) The state appellate court's conclusion was buttressed by its determination that "the record provide[d] overwhelming evidence that th[e] crime was committed in a brutal and heinous manner." (*Id.* at 24.) Next, it rejected Chears' second contention by concluding that the trial court had considered mitigating evidence. (*Id.* at 24-29.) The state appellate court also found no inconsistency between the "jury's finding of unreasonable self defense" and the imposition of an extended-term sentence based on the aggravating factors identified by the trial court. (*Id.*) Finally, the state appellate court found that the extended-term sentence was supported by the record. (*Id.* at 30-31.) Chears subsequently filed a petition for leave to appeal to the Illinois Supreme Court; his petition was denied on November 24, 2004. (*Id.*, Ex. X at 1.)

After direct review of his case was complete, Chears filed an amended motion to reinstate the previously-submitted postconviction petition with the trial court. (*Id.*, Ex. L at C57.) The motion was granted, and Chears subsequently submitted a supplemental postconviction petition which included additional claims that arose out of his direct appeal. (*Id.*, Ex. L at C72; Ex. M at 1-23.) Chears presented several arguments in his petition. First, he asserted that his sentence was improper because the trial judge considered an incorrect extended-term sentencing range of twenty-to-forty years, rather than the correct fifteen-to-thirty years. (*Id.*, Ex. M at 7-9.) Building from this contention, Chears also argued that his appellate counsel was ineffective because she did not raise the trial court's reliance on an incorrect sentencing range on direct appeal. (*Id.* at 9-11.) Additionally, Chears argued that he received ineffective assistance of counsel at trial.

---

[6] The state appellate court applied a plain error analysis because it found that Chears did not properly object to the *Apprendi* error at his trial or sentencing. (R. 29, State Ct. R., Ex. A at 21.)

Specifically, he pointed to the following alleged deficiencies: (1) a failure to investigate and call Robert Porter ("Porter") and Larry Young ("Young"), two witnesses Chears claims would have demonstrated that he did not fire a final shot into Chambers' head after he fell to the ground; (2) a failure to investigate Ferguson's criminal history; (3) a failure to remind the trial court of the appropriate extended-term sentencing range; and (4) failing to file a motion to reconsider the sentence. (*Id.* at 11-19.) Finally, Chears argued that the state committed a violation under *Brady v. Maryland*, 373 U.S. 83 (1984) by failing to disclose Ferguson's full criminal history. (*Id.* at 19-22.)

On September 27, 2006, the state moved to dismiss Chears' postconviction petition. (*Id.*, Ex. L at C16.) Later that fall, on November 1, 2006, the trial court granted the state's motion to dismiss. (*Id.*, Ex. K at H9.) In its oral ruling, the trial court, in a proceeding presided over by the same trial judge who sentenced Chears, did not directly address the merits of Chears' ineffective assistance of counsel or *Brady* claims. (*See id.* at H1-H11.) Rather, the trial court focused on Chears' challenge to its reliance on an incorrect sentencing range. (*See id.*) While admitting that at the time of Chears' sentencing he mistakenly believed that the correct extended-term sentencing range was twenty-to-forty years, the trial judge stated that his misapprehension did not affect his sentencing decision. (*Id.* at H8.) Specifically, the trial judge stated that his mistake "had no bearing on [his] decision one way or another concerning [Chears]"; rather, he declared that "the sentence of thirty years was warranted by the facts regarding [Chears]." (*Id.* at H7-H8.) Chears immediately appealed the trial court's denial of his postconviction petition. (*Id.* at H10.)

On April 8, 2009, a state appellate court affirmed the trial court's denial of Chears' postconviction petition. (*Id.*, Ex. B at 1.) In doing so, it rejected all of Chears' arguments. First,

6

it concluded that Chears failed to make a substantial showing of a due process violation with respect to the trial judge's application of an incorrect sentencing range. (*Id.* at 7-9.) Second, the state appellate court rejected any ineffective assistance of counsel claims tied to the application of an incorrect sentencing range by determining that Chears was not prejudiced by the incorrectly identified sentencing range. (*Id.* at 9-10.) Next, it disposed of Chears' *Brady* claim by finding that there is "no reasonable probability that the disclosure of Ferguson's adult criminal history would have resulted in a different outcome of [Chears'] sentencing hearing." (*Id.* at 11.) Finally, it rejected Chears' ineffective assistance of counsel claim flowing from his trial counsel's failure to call Porter and Young by concluding that Chears was not prejudiced by their absence at trial. (*Id.* at 11-12.) After the state appellate court affirmed the trial court's decision, Chears filed a petition for leave to appeal to the Illinois Supreme Court; his petition was denied on September 30, 2009. (*Id.*, Ex. Z.)

## PROCEDURAL HISTORY

Chears filed his original habeas petition on April 14, 2006. (R. 1, Pet.) On June 21, 2006, the Court dismissed Chears' original petition without prejudice, and granted Chears leave to file an amended petition upon the conclusion of his state court postconviction proceedings. (R. 9, Min. Entry.) Chears filed his amended petition for writ of habeas corpus (the "petition") on March 22, 2010. (R. 16, Am. Pet.)

In his petition, Chears presents four arguments in support of his plea for habeas relief. First, he argues that his "30-year extended term sentence for second-degree murder, based on a judicial finding by only a preponderance of the evidence that his offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" violated his rights under

*Apprendi.* (*Id.* at 7.) Second, Chears asserts that both his trial and appellate counsel provided constitutionally ineffective assistance by "fail[ing] to challenge the trial judge's reliance on an incorrect and higher extended-term sentencing range[.]" (*Id.* at 8.) Next, Chears maintains that his trial counsel "rendered constitutionally ineffective assistance when he failed to investigate and call two eyewitnesses to the shooting who would have testified that Chears did not stop and fire a final shot at [Chambers] after he fell to the ground[.]" (*Id.*) According to Chears, "had counsel investigated and called these two witnesses, they would have directly contradicted the state's witnesses and Chears likely would not have been subject to an extended-term sentence." (*Id.*) Finally, he contends that the state committed a *Brady* violation by failing to turn over Ferguson's criminal history. (*Id.* at 8-9.)

## LEGAL STANDARD

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), habeas relief may be granted only when a state court decision is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Etherly v. Davis*, 619 F.3d 654, 660 (7th Cir. 2010). The statutory phrase "clearly established Federal law as determined by the Supreme Court of the United States," is a critical limitation under Section 2254(d)(1) and refers to "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant state court decision." *Washington v. Smith*, 219 F.3d 620, 627 (7th Cir. 2000) (quoting *Terry Williams v. John Taylor*, 529 U.S. 362, 412 (2000)).

"A decision is 'contrary to' federal law when the state court applied a rule that

'contradicts the governing law' set forth by the Supreme Court or if the state court reached a different outcome based on facts 'materially indistinguishable' from those previously before the Supreme Court." *Etherly*, 619 F.3d at 660 (quoting *Williams*, 529 U.S. at 405-06). On the other hand, "[a] state court unreasonably applies federal law if it identifies the correct legal principle but unreasonably applies it to the facts of the case, or if it unreasonably refuses to extend a principle to a context in which it should apply." *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010) (citing *Williams*, 529 U.S. at 407).

To succeed on a claim predicated on Section 2254(d)'s "unreasonable application" clause, a petitioner must show that the state court's application of federal law was both incorrect and unreasonable. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (quoting *Raygoza v. Hulick*, 474 F.3d 958, 963 (7th Cir. 2007)). "A state court's decision is 'unreasonable' within the meaning of § 2254(d)(1) only if it is 'so erroneous as to be objectively unreasonable' and 'well outside the boundaries of permissible differences of opinion.'" *Bennett v. Gaetz*, 592 F.3d 786, 790 (7th Cir. 2010) (quoting *Emerson v. Shaw*, 575 F.3d 680, 684 (7th Cir. 2009)). Additionally, a state court decision may be considered unreasonable where it is in "tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary" as to be unreasonable. *Badelle v. Correll*, 452 F.3d 648, 655 (7th Cir. 2006) (internal quotation marks and citation omitted). Put simply, "a state court's decision 'minimally consistent with the facts and circumstances of the case' is not unreasonable[.]'" *Conner v. McBride*, 375 F.3d 643, 649 (7th Cir. 2004) (quoting *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997)).

As a general matter, under post-AEDPA habeas law, federal courts defer to a great extent

to the decisions of state courts, and review those decisions for reasonableness only. *Ben-Yisrayl v. Buss*, 540 F.3d 542, 546 (7th Cir. 2008). This deference, however, "does not imply abandonment or abdication of judicial review." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## ANALYSIS

### I. *Apprendi* claim

In *Apprendi*, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. In his petition, Chears argues that his rights under *Apprendi* were violated by the state trial court when it sentenced him to an extended-term sentence "based on a judicial finding by only a preponderance of the evidence that his offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (R. 16, Am. Pet.)

In his answer to the petition, Respondent does not address the merits of Chears' *Apprendi* claim. (R. 28, Answer at 16-19.) Instead, he contends that "because the state appellate court never considered this claim on its merits, rejecting it on procedural grounds–[Chears'] *Apprendi* claim is procedurally defaulted and thus beyond federal habeas review." (*Id.* at 16.) Thus, as a threshold matter, the Court must determine whether Chears' *Apprendi* claim is indeed procedurally defaulted.

If a state court clearly and expressly states that its judgment rests on a state procedural bar and does not reach the merits of a federal claim, then a federal court is unable to consider that claim on collateral review. *Gray v. Hardy*, 598 F.3d 324, 329 (7th Cir. 2010) (citing *Harris v. Reed*, 489 U.S. 255, 263 (1989)). Under this rule, "if a state court did not reach a federal issue

10

because it applied, evenhandedly, a state procedural rule, the matter is closed to the federal

habeas court absent a showing of cause and prejudice." *Rodriguez v. McAdory*, 318 F.3d 733,

735 (7th Cir. 2003) (internal quotation marks and citation omitted). Where a state court reviews

the federal claim for plain error as the result of a state procedural bar, that limited review does

not constitute a decision on the merits. *Gray*, 598 F.3d at 329 (citations omitted).

In this case, the state appellate court found that "the trial court violated the principles of

*Apprendi* by sentencing the defendant to an extended-term sentence of 30 years based on its own

finding of exceptionally brutal and heinous conduct."[7] (R. 29, State Ct. R., Ex. A at 20.) Based

on its review of the record, the state appellate court then concluded that Chears "failed to object

at any time during his trial or sentencing hearing to the trial court's determination that he

committed second-degree murder in a brutal and heinous manner." (*Id.*, Ex. A at 21.) As a

result, it conducted a plain error analysis in addressing what it deemed to be an unpreserved and

forfeited error. (*Id.*, Ex. A at 20-24.) Because the state appellate court reviewed Chears' claim

for plain error as a result of the forfeiture, the Court finds that its decision was not on the merits.

Thus, the Court concludes that Chears' *Apprendi* claim is procedurally defaulted.[8]

To avoid this result, Chears argues that his *Apprendi* claim is not procedurally defaulted

---

[7] The last court to address Chears' *Apprendi* claim was the state appellate court on direct review. The Court will therefore focus its analysis on the state appellate court's June 1, 2004 ruling.

[8] If a petitioner has procedurally defaulted his claim, "he may obtain federal habeas relief only upon a showing of cause and prejudice for the default or upon a showing that a failure to grant him relief would work a fundamental miscarriage of justice. A fundamental miscarriage of justice occurs when a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Bintz v. Bertrand*, 403 F.3d 859, 863 (7th Cir. 2005) (internal quotation marks and citations omitted). In this case, Chears has not specifically presented any basis to excuse his procedural default. (*See* R. 16, Am. Pet.; R. 30, Reply at 3-6.)

because his "trial attorney objected to the imposition of an extended-term sentence and argued strenuously against it." (R. 30, Reply at 4.) The Court's review of the record does indicate that Chears' trial attorney did object to the imposition of an extended-term sentence. (*See* R. 29, State Ct. R., Ex. G at I13-I17.) This objection, however, was based on factual, rather than legal, contentions. (*See, e.g., id.* at I16 ("I do not believe that the facts in this case are such that it calls for the imposition of any extended term as the state would seek, nor do I believe the facts in this case [are] such that it calls for the imposition of any term of incarceration.").) Chears does not direct the Court to any portion of the record suggesting that his trial counsel objected to the trial judge–as opposed to a jury–determining that he committed second-degree murder in a brutal and heinous manner. (*See* R. 16, Am. Pet.; R. 30, Reply at 3-6.) While Chears is correct in noting that his trial counsel would not have been able to specifically rely upon *Apprendi* at his sentencing, he mistakenly argues that the timing of the Supreme Court's ruling in *Apprendi* should excuse his failure to properly object to the trial court's decision to enhance his sentence based on a judicial finding of aggravating factors. Although *Apprendi* had not been decided at the time of Chears' sentencing, "an *Apprendi*-like objection was available to defendants even before the Supreme Court issued its decision, and, indeed, defendants began making the argument soon after the federal sentencing guidelines came into being." *Gray*, 598 F.3d at 330 (citing *Valenzuela v. United States*, 261 F.3d 694, 700 n.2 (7th Cir. 2001)); *accord Kaczmarek v. Rednour*, No. 09-2417, 2010 WL 4628671, at *7 (7th Cir. Nov. 17, 2010). In this case, Chears' trial counsel failed to make such an objection, and therefore forfeited the *Apprendi* issue on appeal. Thus, the state appellate court's disposition of Chears' *Apprendi* claim on state

procedural grounds properly serves as a bar to federal habeas review of its merits.[9]

## II.    *Strickland* claims

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the legal

principles governing ineffective assistance of counsel claims. "Under *Strickland*, a defendant

must demonstrate both that his counsel's performance was deficient when measured against

prevailing standards of professional reasonableness, and that the deficient performance

prejudiced his defense." *Ebert v. Gaetz*, 610 F.3d 404, 411 (7th Cir. 2010) (citing *Strickland*,

466 U.S. at 689-92). To be considered deficient, representation must fall below "an objective

standard of reasonableness." *Strickland*, 466 U.S. at 688. With respect to the prejudice

requirement, the "defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A

reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at

694. "[A] court making the prejudice inquiry must ask if the defendant has met the burden of

showing that the decision reached would reasonably likely have been different absent the errors."

*Id.* at 696. When challenging his sentence, a defendant must show that but for trial counsel's

errors, there is a reasonable probability that he would have received a different sentence. *Griffin*

*v. Pierce*, No. 09-3138, 2010 WL 3655899, at *12 (7th Cir. Sept. 22, 2010) (citing *Strickland*,

466 U.S. at 695). A court "need not address both components of the inquiry if the defendant

makes an insufficient showing on one." *Strickland*, 446 U.S. at 697. Thus, if a defendant fails to

---

[9] Chears' attempt to distinguish *Gray* is unpersuasive. While Chears claims that "[u]nlike the petitioner in *Gray*, [he] challenged his extended-term sentence in the trial court," (R. 30, Reply at 4), the record in this case reveals that Chears did not raise an *Apprendi*-like objection before the trial court. (*See* R. 29, State Ct. R., Ex. G at I13-I17.) Thus, like the petitioner in *Gray*, Chears' *Apprendi* claim was considered forfeited and reviewed for plain error by the state appellate court.

13

demonstrate prejudice, a court can dispose of his claim without evaluating his counsel's performance. *See id.*

On habeas review, courts "do not apply the *Strickland* standards directly, but instead ask whether the post-conviction court's factual findings and conclusions pass AEDPA muster." *Conner*, 375 F.3d at 657. Specifically, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable–a substantially higher threshold.'" *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Indeed, "[t]he bar for establishing that a state court's application of the *Strickland* standard was 'unreasonable' is a high one, and only a clear error in applying *Strickland* will support a writ of habeas corpus." *Allen v. Chandler*, 555 F.3d 596, 600 (7th Cir. 2009). Here, Chears presents two distinct *Strickland* claims. The Court will address each in turn.

## A. Failure to challenge application of incorrect sentencing range

Chears argues that both his trial and appellate counsel were ineffective because they failed to challenge the trial judge's misapprehension about the appropriate sentencing range. (R. 16, Am. Pet. at 7-8.) As highlighted by Chears, at the time of his trial and sentencing, the extended-term range for second-degree murder was fifteen-to-thirty years. *See* 730 Ill. Comp. Stat. 5/5-4.5-30(a). The trial judge, however, incorrectly believed that the appropriate range was twenty-to-forty years when he sentenced Chears to an extended-term of thirty years. (*See, e.g.*, R. 29, State Ct. R., Ex. G at I27.) According to Chears, his trial and appellate counsel's failure to challenge this mistake rendered their assistance constitutionally deficient. (R. 16, Am. Pet. 7-8.) He contends that the state appellate court's failure to find prejudice resulting from his lawyers'

14

failure to challenge the application of an incorrect sentencing range constituted an unreasonable application of *Strickland* which supports the grant of habeas relief.[10] (R. 30, Reply at 8.)

In its decision, the state appellate court found a lack of prejudice resulting from Chears' counsels' failure to challenge the sentencing range.[11] (R. 29, State Ct. R., Ex. B at 10.) Having already disposed of a due process claim based on the application of the incorrect sentencing range, the state appellate court found that Chears was attempting to repackage his due process claim as an ineffective assistance of counsel claim. (*Id.* at 9-10 ("The defendant makes essentially the same due process claim as his challenge to the effectiveness of this trial counsel and appellate counsel.").) Apparently based on this understanding of Chears' arguments, the state appellate court rejected Chears' claims on two related grounds that were more fully developed in its disposition of Chears' due process claim. (*See id.*) First, the state appellate court, in the context of its due process analysis, found that "the defendant has made no showing that the trial court *relied* on the incorrect sentencing range in imposing a sentence of 30 years[.]" (*Id.* at 9.) In addition, it found that Chears was not prejudiced by the application of an incorrect sentencing range because the trial judge, in rejecting his postconviction petition, stated that Chears was not prejudiced by the incorrectly identified sentencing range. (*Id.*) In its due process analysis, the state appellate court quoted the following language from the trial judge's oral ruling rejecting Chears' postconviction petition: "It wasn't like I compromised and said the range is

---

[10] Chears does not argue that the state court's decision with respect to his first *Strickland* claim was "contrary to" federal law. (*See* R. 30, Reply at 6-8.)

[11] In its analysis of Chears' remaining claims, the Court will review the state appellate court's April 2009 ruling affirming the trial court's denial of Chears' postconviction petition. *See Smiley v. Thurmer*, 542 F.3d 574, 580 (7th Cir. 2008) ("The relevant state court decision is that of the last state court to address the habeas petitioner's arguments on the merits[.]").

15

forty, therefore I'll give him thirty. I felt based on the totality of facts in this case that a sentence of thirty years was appropriate for the Defendant, Lealton Chears." (*See id.* at 9.) Seemingly based on these two grounds, the state appellate court concluded that Chears was not prejudiced by the incorrectly identified sentencing range. (*Id.* at 10.)

While the state appellate court did not directly quote *Strickland*, it is not required to do so to apply its well-known directive. *Cf. Bell v. Cone*, 543 U.S. 447, 455 ("Federal courts are not free to presume that a state court did not comply with constitutional dictates on the basis of nothing more than a lack of citation.") (citations omitted). Despite its failure to cite to the applicable federal law, it is evident that the state appellate court applied *Strickland*'s prejudice standard to the performance of Chears' trial and appellate counsel. (*See, e.g., id.* at 10 (citing *People v. Coleman*, 701 N.E.2d 1063, 1079 (Ill. App. Ct. 1998) for the proposition that there is "no prejudice if there is no reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.").) Based on the Court's review of the state appellate court's decision and the record in this case, the Court concludes that the state appellate court's prejudice determination is not "objectively unreasonable."[12]

In support of his claim of prejudice flowing from his trial and appellate counsel's failure to challenge the application of the incorrect extended-term sentencing range, Chears argues that "[b]ecause the judge apparently believed he was sentencing [him] to the middle of the range, trial counsel apprising the judge of the appropriate and lower range reasonably could have resulted in a lower sentence. Likewise, if appellate counsel had challenged [his] sentence on these grounds

---

[12] Although the portion of the state appellate court opinion on the first *Strickland* issue is not a model of clarity or analytical rigor, it is still entitled to AEDPA deference. *See Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009) ("[E]ven summary dispositions are entitled to deference under AEDPA.").

on direct appeal, the appellate court, following well-established caselaw [sic], reasonably could have vacated [his] sentence and remanded for re-sentencing under the proper, lower, sentencing range." (R. 16, Am. Pet. at 8.) Both of these contentions fail to persuade.

With respect to his *Strickland* claim involving his trial counsel, Chears provides no support for his position that there is a reasonable probability that his sentence–which was within the correct sentencing range–would have been different had his trial counsel corrected the trial judge's misapprehension about the extended-term sentencing range. One can certainly speculate as to whether his sentence could have been different had the trial judge used the correct sentencing range, but Chears has failed to show that there is a reasonable probability that the outcome of his sentencing would have differed. While he asserts that his thirty-year extended-term sentence was the product of the trial judge deliberately sentencing him to the middle of the mistaken twenty-to-forty year extended-term range, (R. 16, Am. Pet. at 8), he fails to provide any support for this proposition. In the absence of any persuasive arguments suggesting prejudice, the Court finds that the state appellate court's prejudice determination was not "well outside of the boundaries of permissible differences of opinion." *Watson*, 560 F.3d at 690.

Similarly, as to his *Strickland* claim pertaining to his appellate counsel, Chears also fails to provide any support for his assertion that the state appellate court on direct review "reasonably could have vacated [his] sentence and remanded for re-sentencing under the proper, lower sentencing range," (R. 16, Am. Pet. at 8), had the sentencing issue been raised. While he claims that such an outcome reasonably could have resulted from an application of state law, the state appellate court addressed and rejected the "well-established" Illinois case law that Chears asserted would have required him to be resentenced. (*See id.*) In short, given Chears' failure to

17

show that there was reasonable probability that the result of his direct appeal proceedings would have been different had the sentencing issue been raised by his attorney, the Court finds that the state appellate court's prejudice determination was not objectively unreasonable. Accordingly, the Court denies Chears' petition to the extent it seeks relief based on his trial and appellate counsel's failure to challenge the application of an incorrect sentencing range.[13]

Chears argues that the state appellate court erred because it "presumed a lack of prejudice by relying on the trial judge's insistence that he believed the 30-year sentence appropriate regardless of the sentencing range." (R. 30, Reply at 7.) While the state appellate court could have properly considered the remarks of the trial judge, it could not, given *Strickland*'s objective prejudice standard, deem them dispositive. *Cf. Griffin*, 2010 WL 3655899, at *13 (stating that where the same judge presides over both the trial and postconviction proceeding, the judge's statements indicating that the introduction of proffered evidence would not have changed a defendant's sentence may be considered, but are not conclusive) (citing *Raygoza*, 474 F.3d at 964). Based on the Court's review of the entirety of the state appellate court's decision, the Court cannot agree with Chears that the state appellate court "presumed" a lack of prejudice. Rather than accepting the trial judge's statements as dispositive, the state appellate court used them to clarify its conclusion that no *Strickland* violation had occurred. (*See* R. 29, State Ct. R., Ex. B at 10 ("Having made no showing of a constitutional due process violation, the defendant is

---

[13] Chears also contends that the state appellate court's decision unreasonably applied *Hicks v. Oklahoma*, 447 U.S. 343 (1980). According to Chears, *Hicks* holds that "when faced with a misapprehended sentencing range, a defendant has a substantial due process right to be re-sentenced under the correct range because courts presume that the sentencer's decision was necessarily informed by the prescribed range." (R. 30, Reply at 6.) Contrary to Chears' characterization, *Hicks* does not, under any reasonable reading, stand for this proposition. Thus, the Court finds that because *Hicks* in no way applies to the circumstances in this case, the state appellate court could not have unreasonably applied *Hicks*.

18

no better off making this same claim as one against counsel. As [the trial judge] made clear, the defendant was not prejudiced by the incorrectly identified sentencing range. Regardless of where the defendant seeks to place fault, as a due process violation or as a violation of his right to counsel, the conclusion that no constitutional violation occurred remains the same.").) Indeed, this was the same approach taken by the state appellate court when examining what it understood to be Chears' related due process claim. (*See id.* ("That no substantial showing of a constitutional violation can be made under the facts of this case is reinforced by the clear message of the trial court[.]")) This argument therefore fails to establish that the state appellate court's ruling was objectively unreasonable.

## B.      Failure to investigate and call two witnesses

Chears also contends that his trial counsel provided constitutionally ineffective assistance when he failed to investigate and call Porter and Young. (R. 16, Am. Pet. at 8.) According to Chears, these two witnesses would have directly contradicted the testimony of the witnesses who stated that Chears fired a final shot after Chambers was already wounded and laying on the ground. (R. 30, Reply at 9.) This testimony, Chears concludes, would have rebutted evidence that both the trial judge and appellate court on direct review relied upon in finding that he "acted in an exceptionally brutal and heinous manner indicative of wanton cruelty" and imposing an extended-term sentence. (*Id.* at 8-9.) Chears maintains that "had counsel investigated and called these two witnesses . . . [he] likely would not have been subject to an extended-term sentence." (R. 16, Am. Pet. at 8.)

Again, it is evident that the state appellate court applied *Strickland.* (*See* R. 29, State Ct. R., Ex. B at 11 (citing *People v. Ford*, 857 N.E.2d 900 (2006) for the proposition that "on a

sentencing issue, to establish actual prejudice under *Strickland*, the defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the defendant's sentence would have been different.").) As with Chears' first set of *Strickland* claims, the state appellate court found that this claim was not meritorious because Chears had failed to show that he was prejudiced by his trial counsel's failure to call Porter and Young. (*See id.* at 10-11.) The Court's inquiry will therefore focus on whether the state appellate court's prejudice determination involved an unreasonable application of *Strickland*.[14]

In its opinion, the state appellate court noted that the record contained the "testimony of five witnesses (three for the State and two for the defendant) that [Chears] fired the four shots in rapid succession." (*Id.* at 11.) On this basis, it concluded that the testimony of Porter and Young–who were eyewitnesses to the incident and would have testified that Chears fired all four shots in rapid succession–would have been cumulative. (*See* R. 29, State Ct. R., Ex. B at 11-12.) Additionally, the state appellate court stated that it found no basis to conclude that the testimony of Porter and Young, added to that of the five witnesses who testified that all of the shots were fired rapidly, would have precluded the trial judge's "implied finding" that Chears shot

---

[14] Chears argues that the state appellate court's opinion is "contrary to *Strickland* where the court deferred, without considering the effect of two eyewitnesses' testimony on the totality of the evidence regarding the shooting, to the trial judge's insistence that nothing would have changed his sentencing determination." (R. 30, Reply at 9.) According to Chears, this "lack of analysis defies *Strickland*." (*Id.*) The Court disagrees. To violate AEDPA's "contrary to" clause, the state appellate court must have either "(i) adopted a rule that contradicts the governing law of the U.S. Supreme Court or (ii) on a set of facts materially indistinguishable from those at issue in the applicable Supreme Court precedent, reached a different result." *Ward v. Sternes*, 334 F.3d 696, 703 (7th Cir. 2003). Here, contrary to Chears' assertion, the state appellate court's decision did not defer to the trial judge's analysis. (*See* R. 29, State Ct. R., Ex. B at 11-12.) Rather, it applied *Strickland*, the Supreme Court case which governs this claim, albeit in a terse manner. Nor did it reach a different result than did the Supreme Court on materially indistinguishable facts. Thus, the Court finds that Chears' "contrary to" argument is without merit.

Chambers while he was on the ground. (*Id.*) Thus, it concluded that Chears was not prejudiced by his counsel's failure to investigate and call Porter and Young.[15] (*Id.*)

As has been previously stated, to find prejudice under *Strickland*, a defendant challenging his sentence must show that but for trial counsel's errors, there is a reasonable probability that he would have received a different sentence. *Griffin*, 2010 WL 3655899, at *12. On federal habeas review, the question a court must answer is "whether the state court's determination that such a probability does not exist is reasonable." *Ellison v. Acevedo*, 593 F.3d 625, 633 (7th Cir. 2010). In examining whether a prejudice showing has been made, a court "must consider the totality of the evidence before the judge or jury." *Strickland*, 466 U.S. at 695. The totality of the evidence in this case, the Court concludes, supports the reasonableness of the state appellate court's prejudice determination.

Chears places great weight on what Porter and Young would have testified to if they had been called at trial, but it is uncertain whether there is a reasonable probability that, had they testified, Chears would have received a non-extended-term sentence. In his affidavit, Porter states that "[Chears] never stood over [Chambers] and shot him." (*See* R. 29, State Ct. R., Ex. M at 56.) Young, on the other hand, states in his affidavit that "[he] never saw [Chears] fire at [Chambers'] head while [Chambers] was on the ground." (*Id.*, Ex. M at 60.) While this

---

[15] The Court notes that in one portion of its analysis, the state appellate court incorrectly recited *Strickland*'s prejudice standard. (*See* R. 29, State Ct. R., Ex. B at 11 ( "[W]e find no merit to the defendant's claim that had defense counsel called Porter and Young, his sentence would have been different.").) In the same paragraph, however, the state appellate court set forth the correct prejudice standard. (*See id.* at 12.) Despite its initial misstatement, the Court will not find that the state appellate court did not apply *Strickland*. *Cf. Johnson v. Loftus*, 518 F.3d 453, 456-57 (7th Cir. 2008) (finding that despite a state appellate court initially misstating *Strickland*'s prejudice prong, the court's subsequent articulation of the correct standard cured the initial error).

testimony buttresses Chears' assertion that he did not stand over Chambers and shoot him, it fails

to directly rebut the factual conclusion that appeared to contribute the trial court's imposition of

an extended-term sentence: Chears shooting Chambers while he was already wounded and laying

on the ground. Even considering the testimony of these two witnesses, this factual conclusion

would have been well-supported by the testimony of Riggs, Dr. Chira, and Investigator

Gurtkowski.[16] The Court finds that this conclusion and the rest of the evidence in the record,

considered in conjunction with the applicable law, establishes that the state appellate court's

prejudice determination was reasonable, and thus passes AEDPA muster.[17]

To be eligible for an extended-term sentence, Chears' actions must have been

"accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." 730 Ill.

Comp. Stat. 5/5-5-3.2(b)(2). In Illinois, "brutal" behavior is defined as that which is "grossly

ruthless, devoid of mercy or compassion; cruel and cold-blooded." *Gray*, 598 F.3d at 332

(quoting *People v. Kaczmarek*, 798 N.E.2d 713, 723 (2003)). "Heinous behavior is defined as

behavior that is 'hatefully or shockingly evil; grossly bad; enormously and flagrantly criminal.'"

*Id.* (quoting *Kaczmarek*, 798 N.E.2d at 723). In addition to being either "exceptionally brutal"

or "heinous," the "behavior must also be indicative of wanton cruelty, which 'requires proof that

---

[16] Investigator Gurtkowski testified that he recovered a fired bullet on the sidewalk near where Chambers fell; he also stated that he found a discharged cartridge in the grass in the same area. (R. 29, State Ct. R., Ex. E at F199-200.) He also testified that he found three discharged cartridge cases on the sidewalk and parkway located south of where Chambers fell. (*Id.*)

[17] Chears also argues that the state appellate court's "opinion unreasonably determined the facts when it found that testimony from Porter and Young would have been cumulative." (R. 30, Reply at 11.) Under Section 2254(d)(2), a "decision involves an unreasonable determination of the facts if it rests upon fact-finding that ignores the clear and convincing weight of the evidence." *Goudy*, 604 F.3d at 399-400 (citation omitted). The Court cannot discern how the state appellate court's conclusion regarding the significance of Porter's and Young's testimony can be considered a finding of fact. The Court is therefore unpersuaded by this argument.

the defendant consciously sought to inflict pain and suffering on the victim of the offense.'" *Id.* (quoting *Kaczmarek*, 798 N.E.2d at 723).

Under Illinois law, Chears' actions could be considered "exceptionally brutal" or "heinous." The evidence presented at trial established that Chears pulled the trigger of his weapon and shot Chambers four times as he was running away from him. (*See* R. 29, State Ct. R., Ex. E at F51-52; Ex. F at G66, G101.) Further, as Dr. Chira noted, any one of the shots could have been independently fatal. (*See id.*, Ex. F at G40.) And, as the trial court found, evidence in the record–specifically the testimony of Riggs, Dr. Chira, and Investigator Gurtkowski –establishes that Chears shot Chambers while he was wounded and laying on the ground.[18] (*Id.*, Ex. A at 29-30.) These facts all indicate behavior that was "devoid of mercy or compassion," and can thus be properly considered "brutal" under Illinois law; further, this behavior could also be labeled as "flagrantly criminal," and therefore "heinous." Additionally, these same facts also establish that Chears "consciously sought to inflict pain and suffering" on Chambers. Given the totality of the evidence, the Court finds that the state appellate court's prejudice determination–specifically, that even with the testimony of Porter and Young, there is no reasonable probability that Chears would not have received an extended-term sentence– is

---

[18] Chears tries to challenge the state courts' factual conclusion on this point. On habeas review, however, a state court's factual conclusions are presumed to be true unless "clear and convincing evidence" to the contrary is presented. 28 U.S.C. § 2254(e)(1). Here, no such evidence has been presented, therefore the state courts' conclusion that Chears shot Chambers while he was wounded and laying on the ground is presumed true.

reasonable.[19]

Accordingly, the Court finds that the state appellate court's prejudice determination is at least "minimally consistent with the facts and circumstances of the case." *Conner*, 375 F.3d at 649. Since it is not "well outside the boundaries of permissible differences of opinion," *Bennett*, 592 F.3d at 790, the Court holds that the state appellate court's decision did not involve an unreasonable application of *Strickland*. Chears' petition–to the extent it seeks habeas relief based on his trial counsel's failure to investigate and call Porter and Young–is denied.

## III.   *Brady* claim

Finally, Chears contends that the state committed a *Brady* violation by failing to turn over Ferguson's criminal history. (R. 16, Am. Pet. at 8-9.) According to Chears, Ferguson's testimony was a "critical factor" in the trial court's sentencing decision. (*Id.*) As a result of the state's failure, Chears submits that "the trial judge accorded Ferguson more credibility than he deserved" in imposing an extended-term sentence. (*Id.*) In his petition, he argues that the state appellate court's unreasonable application of *Brady*'s materiality standard warrants the grant of

---

[19] Even in the absence of the factual conclusion that Chears shot Chambers while he was wounded and laying on the ground, the sum of Chears' actions as established by the evidence in the record still could have led to an extended-term sentence under Illinois law. Indeed, the trial judge, in initially sentencing Chears, suggested this possibility. (*See* R. 29, State Ct. R., Ex. G at I26 ("This Court believes that [] conduct under the circumstances of this case for shooting an unarmed, fleeing individual in my opinion is particularly brutal or heinous, indicative of wanton cruelty and falls within that statute authorizing an extended term sentence.").) This conclusion further supports the reasonableness of the state appellate court's prejudice determination.

habeas relief.[20]  (R. 30, Reply at 11-14.)

In *Brady*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87.  The Supreme Court has since held that "the duty to disclose such evidence is applicable even though there has been no request by the accused, and that the duty encompasses impeachment evidence as well as exculpatory evidence." *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citations omitted).  Favorable evidence is material, and constitutional error results from its suppression by the government, "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Kyles v. Whitley*, 514 U.S. 419, 433-34 (1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985) (opinion of Blackmun, J.)).  A "reasonable probability" of a different result is shown when the suppression "undermines confidence in the outcome of the trial." *Id.* (quoting *Bagley*, 473 U.S. at 678).  In examining a *Brady* claim, the suppressed evidence must be "considered collectively, not item by item." *Id.* at 436.

As with Chears' *Strickland* claims, the Court does not review his *Brady* claim directly. Rather, the Court reviews his claim through the lens of AEDPA, which requires a petitioner to show that the state court's application of *Brady* and its Supreme Court progeny was not just

---

[20] Chears also suggests that the state denied him due process when it failed to correct Ferguson's testimony about his criminal history. (R. 16, Am. Pet. at 8-9.)  He fails to specify, however, what clearly established federal law was unreasonably applied by the state appellate court in adjudicating this claim. (*See* R. 30, Reply at 11-14.)  Indeed, his written submissions to the Court focus on the *Brady* component of his due process claim. (*See id.*)  This argument is therefore waived. *See Estate of Moreland v. Dieter*, 395 F.3d 747, 759 (7th Cir. 2005) ("Perfunctory or undeveloped arguments are waived.").

incorrect, but also unreasonable, "that is, lying well outside the bounds of permissible differences of opinion." *Goudy*, 604 F.3d at 399. In its disposition of Chears' *Brady* claim, the state appellate court focused on the materiality of the state's failure to disclose Ferguson's criminal record. The Court's consideration of his remaining claim will therefore review the reasonableness of the state appellate court's materiality determination.[21]

Here, the state appellate court recited the correct legal standard, namely, *Bagley*'s materiality test. (R. 29, State Ct. R., Ex. B at 10-11.) It then proceeded to find that, based on its review of the record, there was "no reasonable probability that the disclosure of Ferguson's adult criminal history would have resulted in a different outcome of the defendant's sentencing hearing." (*Id.*) This conclusion was based on three grounds. First, the state appellate court found that Ferguson, despite the absence of his adult criminal history, was impeached through his testimony indicating that he had been found delinquent as a juvenile for both aggravated battery and possession of a stolen motor vehicle. (*Id.*) Second, it suggested that even if Ferguson's testimony would have been rendered wholly unbelievable through the introduction of his adult criminal history, Dr. Chira's and Riggs' testimony still supported the conclusion that Chambers was shot while on the ground. (*Id.*) Finally, the state appellate court, at various junctures in its analysis, pointed towards the trial judge's statements in his oral ruling denying Chears' postconviction petition which indicated that the introduction of Ferguson's adult criminal history would not have made a difference in his decision to impose an extended-term sentence. (*Id.*) In sum, the state appellate court concluded that it found "nothing to support [Chears'] claim that further impeachment of Ferguson" would have affected the outcome of his sentencing hearing.

[21] Chears does not contend that the state appellate court's disposition of his *Brady* claim was "contrary to" federal law. (*See* R. 30, Reply at 11-14.)

(*Id.*)

The Court finds that the state appellate court's materiality determination is not "well outside the boundaries of permissible differences of opinion," *Goudy*, 604 F.3d at 399, and thus survives AEDPA scrutiny. At trial, even in the absence of his adult criminal history, Ferguson's credibility was undermined by the revelation that he been found delinquent as a juvenile for both aggravated battery and possession of a stolen motor vehicle.[22] (*See* R. 29, State Ct. R., Ex. E at F114.) Given the aforementioned evidence in the record which strongly suggests (even without Ferguson's testimony) that Chears shot Chambers while he was wounded and laying on the ground, the Court finds that the state appellate court's materiality determination is at least "minimally consistent with the facts and circumstances of the case," *Conner*, 375 F.3d at 649, and is therefore not unreasonable. Accordingly, Chears' *Brady* claim also fails to persuade the Court to grant habeas relief.[23]

## IV.    Certificate of Appealability

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2254 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a

---

[22] The Court notes that Ferguson was eighteen-years-old when he testified at Chears' trial. (R. 29, State Ct. R., Ex. E at F86.)

[23] Chears also argues that the "Illinois courts' unreasonable application of *Kyles* and *Brady* resulted in an unreasonable determination of the facts." (R. 30, Reply at 14.) The Court finds this contention unconvincing as it conflates Section 2254(d)(1)'s "unreasonable application" clause with Section 2254(d)(2)'s "unreasonable determination of the facts" standard. Further, to the extent this argument seeks to unsettle the state courts' factual finding that Chears shot Chambers while he was wounded and laying on the ground, such an effort fails because Chears does not present the "clear and convincing evidence" needed to rebut the presumption of correctness given to state court factual findings under AEDPA.

final order adverse to the applicant." Accordingly, the Court must determine whether to grant Chears a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in this order.

A habeas petitioner does not have the absolute right to appeal a district court's denial of his habeas petition; instead, he must first request a certificate of appealability. *See Miller-El*, 537 U.S. at 335. A habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Evans v. Circuit Court of Cook Cnty., Ill.*, 569 F.3d 665, 667 (7th Cir. 2009). Under this standard, Chears must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 336 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). In cases where a district court denies a habeas claim on procedural grounds, the Court should issue a certificate of appealability only if the petitioner shows that (1) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," and (2) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In this case, the Court concludes that jurists of reason would not find it debatable whether Chears' habeas petition should have been resolved in a different way. As to Chears' procedurally defaulted *Apprendi* claim, it is clear that jurists of reason could not debate the Court's procedural ruling. Additionally, reasonable jurists could not debate that the remainder of Chears' petition, specifically, his *Strickland* and *Brady* claims, should have been resolved in a different matter. In short, under AEDPA's deferential standard of review, the Court's resolution of Chears' petition is not subject to debate by reasonable jurists. Accordingly, the Court declines to certify any

28

issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

## CONCLUSION

For the reasons stated herein, Chears' amended petition (R. 16) is DENIED. The Clerk of the Court is directed to enter a final judgment against petitioner. Additionally, the Court will not issue a certificate of appealability from this final judgment for the reasons stated herein.

Entered:

Judge Ruben Castillo
United States District Court

**Dated:** November 23, 2010